UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


PROVIDENCE HEALTH PLANS OF
OREGON, an Oregon nonprofit corporation,

              Plaintiff,

      v.

CAROL SIMNITT,

              Defendant.

_____

Civil No. 08-44-HA

OPINION AND ORDER

HAGGERTY, District Judge:

      Providence Health Plans of Oregon (plaintiff) seeks reimbursement for medical expenses

incurred by Carol Simnitt (defendant). The parties have filed cross-motions for summary

judgment and both parties seek attorney fees and costs. For the following reasons, the motions

for summary judgment are denied, and a ruling on the requests for awards of fees is reserved.


1 - OPINION AND ORDER

## I.    STANDARDS

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the party opposing the motion. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).  Each moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  Once the initial burden is satisfied, the burden shifts to the party opposing the motion to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted).  All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City and County of S.F.*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted).  Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party has limits.  Each opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The "mere

existence of a scintilla of evidence in support of the [opposing party's] position would be insufficient." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252 (1986).  Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## II.    BACKGROUND

The following facts are undisputed.

Plaintiff operates a benefit plan for Providence Health Systems employees.  Defendant was employed by Providence Health Systems and participated in the benefit plan.

On April 1, 2005, defendant was involved in a serious car accident.  The tortfeasor, a teenage male, crossed the center line at a high rate of speed and crashed head-on into defendant's automobile.  As a result of the accident, the tortfeasor was killed and defendant suffered serious injuries.  Defendant incurred $442,792.59 in medical bills related to the accident.  Plaintiff paid for defendant's medical care.  The $442,792.59 figure was reduced to $143,194.69 due to write-offs and pre-existing agreements with medical providers.

Defendant subsequently recovered $250,000: $25,000 from the tortfeasor and $225,000 from her own car insurance's Underinsured Motorist (UIM) policy.

Plaintiff's Summary Plan Description (SPD) – entitled the "PHS Employee Member Handbook" – contains a section dealing with third-party subrogation.  The section titled "Benefits From Other Sources" reads as follows:

**Third party liability (subrogation)**

Sometimes a third party pays for a member's medical expenses because the member was injured by them.

*Example: You are hurt in a store and the owner was at fault for your injury, the owner or owner's insurance may be responsible for your medical care and services related to your injury.*

In these types of situations, your Plan coverage is secondary.  We need detailed information from you whenever you use your Plan because of:
• a workplace accident, injury or illness;
• an injury or illness that may result in a lawsuit, or for which you expect to receive a settlement;
• a motor vehicle accident.

### Recovering money from a third party

The Plan may recover money from a third party, usually an insurance carrier, who may be responsible for paying for your treatment for an illness or injury.  The Plan may sue in your name, if necessary.

By accepting membership in the Plan, you make an agreement with us – if you receive a settlement for an illness or injury, you must pay us back for the cost of your treatment.

**Example:** *You are injured while on a weekend visit to a coastal resort.  You sue, and are awarded $7,500 plus attorney's fees.  Meanwhile, the Plan has paid a total of $6,000 for treatment of your injury, so you must reimburse us for $6,000 out of your settlement.*

Before you accept any settlement, you must let us know the terms, and tell the third party that we have an interest in the settlement.  If you have medical bills after your [sic] receive a settlement, we will not pay those bills until your settlement is exhausted.

### Notification

If you are using your Plan benefits for an illness or injury you think may be the responsibility of another party, notify us in writing as soon as possible.  In addition, if we identify a claim that may be the responsibility of a third party, we will ask you for more information about how you were injured, and what you are doing to determine the legal liability of the third party who may be at fault.

We also will agree in writing to the following:
• Repay us for medical expenses that we paid related to your subrogated situation to the extent the law allows.
• Include our claims paid for you in any claim you make against the party who injured you.
• Prorate any attorney fees that you spent in your recovery related to our

4 - OPINION AND ORDER

repayment.

This Agreement requires that you cooperate with us so that we can recover the amount due to us by law.

Mayor Aff., Ex. 11 at 3.

There is also a master plan document that is silent with respect to reimbursement of medical expenses.

## III.   DISCUSSION

Plaintiff seeks reimbursement for the $143,194.69 that it expended on defendant's behalf. Plaintiff alleges that it is entitled to a portion of defendant's recovery, pursuant to the subrogation section of the insurance policy that was issued to defendant. Plaintiff relies on the decision in *Sereboff v. Mid Atlantic Medical Services, Inc*., 547 U.S. 356 (2006). In *Sereboff*, the Supreme Court recognized that Employee Retirement Income Security Act (ERISA) plans are entitled to seek a constructive trust or equitable lien over settlement proceeds received by plan members.

Defendant asserts that she does not owe plaintiff any reimbursement or, alternatively, that plaintiff is only owed a portion of the $25,000 recovered from the tortfeasor.

The briefing in this matter has been extensive. In particular, defendant has advanced myriad argument to support her positions. The court evaluated each of these arguments. The analysis below addresses those arguments that were plausibly meritorious. The remainder of defendant's arguments have been considered and rejected.

### 1.   ERISA Preemption

Oregon insurance statutes outline three methods by which a plan can seek reimbursement of medical expenses caused by an automobile accident. *See* Oregon Revised Statutes (ORS) 742.534, 742.536, and 742.538. Each of these methods of recovery is mutually exclusive and

sets the upper limit to the amount of reimbursement that a health insurer can seek.  Defendant

argues that the Oregon statutes govern plaintiff's subrogation action.  Plaintiff responds that the

Oregon statutes are preempted because an ERISA plan is involved.  *See* 29 U.S.C. § 1144(a)

(ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any

employee benefit plan").

Specifically, plaintiff asserts that it is a self-funded ERISA plan exempt from Oregon

state insurance laws.  In *FMC Corp. v. Holliday*, 498 U.S. 52 (1990), the Supreme Court

considered whether an ERISA plan was subject to state insurance regulations.  The plan in

*Holliday* was self-funded and did not "purchase an insurance policy from any insurance

company in order to satisfy its obligations to its participants."  *Id*. at 54.  A plan member was

injured in a car accident and incurred medical expenses that were paid by the plan.  *Id*. at 54-55.

When the plan sought a portion of settlement proceeds paid by the tortfeasor, the plan member

refused to pay.  The plan member relied upon a Pennsylvania law that prohibited benefit plans

from exercising subrogation rights on a member's tort recovery.  *Id*. at 55.  Concluding that

ERISA plans are not entirely exempt from state insurance laws, the Supreme Court held that

insured employee benefit plans are "subject to indirect state insurance regulation" and are

"consequently bound by state insurance regulation insofar as they apply to the plan's insurer."

*Id*. at 61.  A self-funded ERISA plan, however, is "exempt from state regulation insofar as that

regulation 'relate[s] to' the plans."  *Id*. at 61 (alteration in original).  Because the plan in *Holliday*

was self-funded, the Supreme Court concluded that the Pennsylvania law was preempted by

ERISA.  *Id*.

In response, defendant contends that the Providence plan is partially funded through

insurance and, therefore, subject to the Oregon statutes mentioned above.  Defendant points out

6 - OPINION AND ORDER

that Providence currently holds insurance through Kaiser Permanente and Sun Life Assurance Company.  In addition, Providence had stop-loss insurance through Companion Life Insurance Company for medical claims over $300,000 the year that defendant sustained her injuries.

Although the *Holliday* court held that ERISA plans are not entirely exempt from state insurance laws, ERISA plans are only "bound by state insurance regulation insofar as they apply to the plan's insurer."  *Id*. at 61; *see also Lincoln Mut. Cas. Co. v. Lectron Prods., Inc., Employee Health Plan*, 970 F.2d 206, 210 (6th Cir. 1992) (holding that "states may not regulate ERISA plans but may, consistent with the traditional state regulation of insurance, regulate the companies that insure ERISA plans").  In this case, however, "all benefits for which Providence seeks reimbursement were paid exclusively from the self-funded medical plan."  Pl.'s Resp. at 8.  Because defendant's medical expenses did not trigger coverage under Providence's insurance policies, there is no basis upon which this court can indirectly apply Oregon insurance statutes to the Providence plan.  This outcome is consistent with Ninth Circuit case law, which has "repeatedly emphasized that 'ERISA contains one of the broadest preemption clauses ever enacted by Congress.'"  *Security Life Ins. Co. of Am. v. Meyling*, 146 F.3d 1184, 1188 (9th Cir. 1998) (quoting *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1439 (9th Cir. 1990)).

Defendant also argues that ERISA preemption is inappropriate because plaintiff initially asserted its right to reimbursement under the Oregon statutes.  In a letter dated March 8, 2006, plaintiff's counsel indicated that "Providence is asserting its right under O.R.S. 742.536 to a lien on any settlement proceeds."  Mayor Aff., Ex. 3.  Because plaintiff indicated it would pursue reimbursement under ORS 742.536, defendant contends that plaintiff cannot now argue that the Oregon statutes are preempted by ERISA.

7 - OPINION AND ORDER

"Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996). Defendant has not introduced evidence that plaintiff benefitted from the position staked out in the March 2006 letter. Rather than seeking to gain an advantage, plaintiff was attempting to comply with Oregon law. Within thirty days of learning about an insured's potential legal claim against a third-party, an insurer must notify the insured that they intend to seek reimbursement under ORS 742.536. Because an insurer must reserve the right to reimbursement under ORS 742.536 or risk waiving that right, counsel understandably referenced the Oregon statute in the March 2006 letter. Mentioning ORS 742.536, in a letter sent nearly two years before litigation began and without taking further action, is an insufficient basis for estopping plaintiff in the manner asserted by defendant.

### 2. Conflict Between the Master Plan Document and SPD

The primary document governing an employee benefit plan is the master plan document, which sets forth the terms and conditions of the plan. Those terms and conditions are then summarized for employees in the benefit plan's summary plan description.[1] *Pisciotta v. Teledyne Indus.*, 91 F.3d 1326, 1329 (9th Cir. 1996). "The SPD is the statutorily established means of informing participants of the terms of the plan and its benefits." *Id.*

---

[1] The court notes that plaintiff attached the wrong SPD to the Complaint. Plaintiff has corrected its error and filed the correct SPD with the court. *See* Pl.'s Concise Statement of Material Facts, Ex. A. Although defendant repeatedly raises this issue in its briefs, the court attaches no significance to plaintiff's clerical error.

Defendant claims that "there is a conflict between the master plan document which is silent on reimbursement and the SPD which allows reimbursement only from the liable third-party." Am. Mem. in Supp. of Def.'s Mot. for Summ. J. (Def.'s Am. Mem. for Summ. J.) at 9.

Defendant cites *Bergt v. Retirement Plan for Pilots Employed by Markair, Inc.*, 293 F.3d 1139 (9th Cir. 2002). The employer in *Bergt* created an ERISA retirement plan that allowed current and former pilots to participate. *Id*. at 1141. The plan master document indicated that plaintiff was eligible to participate in the retirement plan. *Id*. at 1143. The SPD, however, "unambiguously" prevented plaintiff from participating in the plan. *Id*. at 1145. The Ninth Circuit observed that it was not dealing with a minor conflict, but "with a substantially more egregious ambiguity arising from an inconsistency between the plan master document and plan summary." *Id*. The court concluded that "when the plan master document is more favorable to the employee than the SPD, and unambiguously allows for eligibility of an employee, it controls, despite contrary unambiguous provisions in the SPD." *Id*. The *Bergt* court also cited several cases that held the SPD controlled where it conflicted with, and was more favorable to the employee, than the master plan document. *Id.*

Defendant contends that the SPD conflicts with the master plan, because the SPD authorizes subrogation and the master plan does not. Although defendant asserts that the "Master Plan document controls because it is more favorable to Ms. Simnitt," this situation is distinguishable from *Bergt*. Def.'s Am. Mem. for Summ. J. at 10. In *Bergt*, the Ninth Circuit reasoned that it was dealing with an "egregious ambiguity" because the plaintiff was eligible under the master plan and "unambiguously" ineligible under the SPD. Here, the master plan document and SPD are not directly at odds. The alleged inconsistency is that the master plan is silent regarding the plan's right to reimbursement.

9 - OPINION AND ORDER

The equitable principle underlying *Bergt* is that plan members are entitled to rely on the plan documents – including the master plan and SPD – that have been provided to participants. Accordingly, if one plan document is more favorable to a plan member than another plan document, courts construe the conflict against the ERISA plan in order to avoid unfairly prejudicing plan members. This principle, however, does not justify disregarding the SPD based on mere silence in the master plan. In *Bergt*, the Ninth Circuit recognized "that the SPD is part of the ERISA plan" and cited with approval the Tenth Circuit's decision in *Chiles v. Ceridian*. 95 F.3d 1505, 1511 (10th Cir. 1996) (holding that "SPDs are considered part of the ERISA plan documents" and that when "interpreting the terms of the ERISA plan we examine the plan documents as a whole"). Here, viewing the plan documents as a whole, the SPD supplements the master plan document and notifies plan members that they are expected to permit subrogation if they recover monies from a third party. Since the SPD and master plan are not in conflict, the important policy of protecting plan members from misleading or false information contained in a plan document is not implicated. Courts in several circuits have held that a "summary plan description which is silent on a specific term or issue cannot prevail over the master plan document." *Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1136 (10th Cir. 1998) (listing cases). Similarly, this court believes that a master plan that is silent on an issue cannot prevail over an SPD.

Alternatively, defendant could have argued that an SPD only summarizes the master plan and cannot introduce new terms or policies that disadvantage plan members. *See Brush Wellman, Inc. v. Montes*, 295 F. Supp. 2d 785, 794-95 (N.D. Ohio 2003) ("Thus, standing alone, the summary plan description cannot give rise to a right to reimbursement that is not found in the

underlying Program document.").  In this case, however, the SPD was expressly incorporated
into the Providence master plan.  Exhibit B to the master plan states:

> Medical Program benefits are set forth in the Providence Health Plan Member
> Handbook for Providence Health System Employees, available on-line at
> http://www.providence.org/Health_Plans/Members/PHS, which is incorporated
> by this reference herein.

Pl.'s Resp., Ex. B.  In addition to the SPD notifying plan members of potential subrogation, the
above section establishes that the duty to reimburse plaintiff was incorporated into the master
plan.  *See* 295 F. Supp. 2d at 796 (concluding "that the subrogation and exclusion provisions,
though contained only in the summary plan description, and not found directly in the Program
document, have been incorporated into the Program document by its cross-reference language")
Because the subrogation section was incorporated into the master plan, a reasonable person in
defendant's position would have expected to reimburse plaintiff.

### 3.    Reimbursement From a Participant's Own UIM Policy

Defendant eventually recovered $250,000 from insurance companies: $25,000 directly
from the tortfeasor and the remaining $225,000 from her own UIM policy.  Defendant argues
that plaintiff is only entitled to a portion of the $25,000 recovered directly from the third-party
tortfeasor, and that the $225,000 paid by defendant's insurance company is exempt from
subrogation.

Even if plan members are required to reimburse Providence in certain situations,
defendant argues that the language of the SPD "only allows for recovery of money from third
parties who are responsible for the plan member's injuries, not through first party actions."
Def.'s Am. Mem. for Summ. J. at 5.  Defendant points out that the SPD's subrogation section
focuses on the actions of third parties, e.g.: "Sometimes, a third party pays for a member's

11 - OPINION AND ORDER

medical expenses because the member was injured by them"; "The Plan may recover money from a third party, usually an insurance carrier, who may be responsible for paying for your treatment for an illness or injury"; and "Include our claims for you in any claim you make against the party who injured you."  Mayor Aff., Ex. 11 at 3.

Defendant is correct that the subrogation section of the SPD focuses on the potential liability of third parties.  However, this court is not persuaded that this focus excludes a recovery under a plan member's own UIM coverage.  Despite defendant's attempts to characterize the $225,000 recovered under defendant's UIM coverage as a first-party recovery, this court concludes that there is no practical difference between recoveries from third-party tortfeasors or from participants' own UIM coverage.  "For purposes of UIM coverage, the insurance carrier is said to stand in the shoes of the tortfeasor, and payments made by the UIM carrier are treated as if they were made by the tortfeasor."  *Hamm v. State Farm Mut. Auto Ins. Co.*, 88 P.3d 395, 397 (Wash. 2004); *see also Providence Health System-Washington v. Bush*, 461 F. Supp. 2d 1226, 1237 (W.D. Wash. 2006) (applying *Hamm* and concluding that the subrogation language was "broad enough to include the payments" made by the plan member's UIM coverage); *Brush Wellman*, 295 F. Supp. 2d at 797.  "[U]nlike first-party medical coverage, UIM coverage is fault-based meaning that insured must establish a third party's liability in tort to trigger coverage." *Boston Mut. Ins. v. Murphree*, 242 F.3d 899, 903 (9th Cir. 2001).  If defendant had recovered $250,000 directly from the tortfeasor, the entire amount would be eligible for subrogation pursuant to the reimbursement section of the SPD; that defendant recovered $225,000 from her own UIM coverage compels the same outcome.  To hold otherwise would provide a windfall to plan members who are injured by uninsured or underinsured tortfeasors.

12 - OPINION AND ORDER

Defendant contends that the above cases are inapplicable because Oregon courts have recognized a difference between first-party and third-party recoveries. *See Goddard v. Farmers Ins. Co. of Or.*, 120 P.3d 1260 (Or. Ct. App. 2005); *also Reeves v. Nat. Hydraulics Co.*, 632 P.2d 1306 (Or. Ct. App. 1981). Defendant's reference to this Oregon case law is disingenuous. Oregon courts have occasionally used the terms "first-party" and "third-party" for the sake of clarity, but not in addressing defendant's situation. In *Goddard*, for example, the Court of Appeals used the term "first-party" once in its discussion of *State Farm Mutual Insurance Co. v. Campbell*, 538 U.S. 408 (2003). *See* 120 P.3d at 1280 ("[A]lthough the Campbells had presented evidence of State Farm's nationwide practices in handling first-party claims, that evidence did not establish that State Farm was a 'recidivist' in its treatment of third-party claims . . ."). This court rejects defendant's theory that the periodic use of the term "first-party" in other contexts can be interpreted to mean that an Oregon court would hold that defendant's UIM recovery was exempt from subrogation.

Defendant's argument is also undermined by the language of the subrogation section. Although defendant is correct that the SPD does not specifically mention first-party recoveries from a participant's UIM policy, the subrogation section is couched in hypothetical language. The SPD states that the "Plan *may* recover money from a third party, *usually* an insurance carrier, who *may* be responsible for paying for your treatment for an illness or injury." Mayor Aff., Ex. 11 at 3. As a general rule, courts "must construe ambiguities in an ERISA plan against the drafter and in favor of the insured." *Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health and Welfare Ben. Plan*, 64 F.3d 1389, 1393 (9th Cir. 1995). In its *Bergt* decision, the Ninth Circuit adopted the reasoning of the Fifth Circuit:

13 - OPINION AND ORDER

> Any burden of uncertainty created by careless or inaccurate drafting of the summary must be placed on those who do the drafting, and who are most able to bear that burden, and not on the individual employee, who is powerless to affect the drafting of the summary or the policy and ill equipped to bear the financial hardship that might result from a misleading or confusing document.

293 F.3d at 1145 (quoting *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 982 (5th Cir. 1991)). Failing to specifically warn plan members about possible subrogation from a UIM policy creates no undue uncertainty or unfairness. A reasonable plan member, reading the subrogation section, would expect to reimburse the plan if his or her claim against a third-party tortfeasor resulted in payment, whether directly from the tortfeasor or from another source. *See Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382, 387 (9th Cir. 1994) (adopting "the doctrine of reasonable expectations as a principle of the uniform federal common law informing interpretation of ERISA-governed insurance contracts"). Because a reasonable interpretation of the SPD is broad enough to include recoveries from a plan member's own UIM insurance, this court concludes that plaintiff can seek reimbursement from defendant's entire $250,000 recovery.

### 4.    Applicability of Made Whole Doctrine

The parties disagree as to whether defendant must be made whole before plaintiff can recover reimbursement for medical expenses. "It is a general equitable principle of insurance law that, absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole." *Barnes*, 64 F.3d at 1394. The plaintiff in *Barnes*, an ERISA plan member, was involved in a car accident. As a result of the accident, the plan member incurred $23,075.40 in medical bills, $8,906.92 in lost wages, and experienced substantial pain and suffering. *Id*. at 1392. The plaintiff recovered $5,000 from her own automobile insurance policy for medical payments. *Id*.

14 - OPINION AND ORDER

The plaintiff also recovered $25,000 from the tortfeasor, though their settlement agreement provided that the $25,000 represented general damages only. *Id.*

The plaintiff subsequently filed suit against the ERISA plan, asking for $18,075.40, the amount of her medical bills minus $5,000 that was received from her automobile insurance. The plaintiff also submitted an affidavit from her attorney stating that the settlement value of her claims against the tortfeasor was at least $65,000, not including her claim for lost wages.

The Ninth Circuit ruled that plaintiff was entitled to recover her remaining medical expenses, despite having recovered $25,000 from the tortfeasor. The *Barnes* court adopted "as federal common law this generally accepted rule that, in the absence of a clear contract provision to the contrary, an insured must be made whole before an insurer can enforce its right to subrogation." *Id.* at 1395. The court observed that it would not apply the made whole rule "if the subrogation clause in the Plan document specifically allowed the Plan the right of first reimbursement out of any recovery [the plan member] was able to obtain even if [the plan member] were not made whole." *Id.*

Defendant argues that she has not been made whole and, consequently, that plaintiff is not entitled to reimbursement. Plaintiff contends that the made whole doctrine was precluded by a provision in the subrogation section. Plaintiff points to the following language in the SPD: "By accepting membership in the Plan, you make an agreement with us – if you receive a settlement for an illness or injury, you must pay us back for the cost of your treatment." Mayor Aff., Ex. 11 at 3. Plaintiff argues that this language specifically provides plaintiff the right of first reimbursement out of any recovery by a plan member.

Several courts have considered whether similar language in plan documents was sufficiently clear to displace the default rule that an insured must be made whole before an

15 - OPINION AND ORDER

insurer can seek reimbursement.  In *Providence Health System-Washington*, the plan stated that: "[i]f someone else is legally responsible or agrees to compensate you for injuries suffered by you or a family member, you will need to reimburse the plan for up to 100% of any benefits the plan paid in connection with those injuries."  461 F. Supp. 2d at 1234.  The Washington district court observed that "[n]owhere in the plan language is there a suggestion, let alone a clear statement, that a plan beneficiary is signing away his or her make whole rights.  Neither the make whole doctrine nor any euphemism sounding like the make whole doctrine is mentioned in the plan. " *Id*. at 1235.

In *Beveridge v. Benefit Recovery, Inc*., the plan stated that "[t]he Plan's right of subrogation and repayment is not subject to the insured/injured party first being made whole, that is, 'make whole' rule does not apply to the Plan."  No. CIV-04-2729-PHX-SMM, 2006 WL 2052696, at *5 (D. Ariz. July 21, 2006).  The Arizona district court concluded that the plan language did overcome the presumption that the made whole doctrine applied.

In *Cagle v. Bruner*, the Eleventh Circuit considered policy language that gave the plan:

> the right to seek repayment from the other party or his insurance company, or in the event you or your dependent recovers the amount of medical expense paid by the Fund by suit, settlement or otherwise from any third person or his insurer, . . . the right to be reimbursed therefor through subrogation.

112 F.3d 1510, 1521 (11th Cir. 1997).  The *Cagle* court concluded that the above excerpt was "standard subrogation language, which we think does not demonstrate a specific rejection of the make whole doctrine."  *Id*.; *see also Guy v. Se. Iron Workers' Welfare Fund*, 877 F.2d 37, 38-39 (11th Cir. 1989) (applying the made whole doctrine even though the plan had a right to reimbursement from "all amounts recovered by suit, settlement or otherwise from any third person or his insurer to the extent of benefits provided hereunder"); *Copeland Oaks v. Haupt*,

209 F.3d 811, 815 (6th Cir. 2000) (holding that "in order for plan language to conclusively disavow the default rule, it must be specific and clear in establishing *both* a priority to the funds recovered *and* a right to any full or partial recovery").

Based upon the above case law, this court concludes that the language in the SPD is insufficient to disavow the made whole doctrine. In those circuits that have adopted the made whole doctrine as the default rule, insurers are required to state with particularity that the doctrine will not apply. This court concludes that subrogation language stating a participant "must pay the [plan] back" for medical expenses is insufficiently clear to defeat the presumption that the made whole rule applies. Because no "clear contract provision to the contrary" exists, defendant is entitled to be made whole before plaintiff can seek reimbursement.

### 5.    Whether Defendant Has Been Made Whole

This court must next determine whether defendant was made whole by the $250,000 recovered from the tortfeasor and defendant's UIM policy. As an initial matter, this court notes that one-third of defendant's $250,000 recovery was paid in attorney fees. Mayor Aff., Ex. 1 at 3. Because the subrogation section of the SPD allows plan members to deduct any attorney fees spent in recovery, only $166,666.66 of the $250,000 is eligible for reimbursement. Mayor Aff., Ex. 11 at 3 (subrogation provision allows prorating "any attorney fees that you spent in your recovery related to our repayment").

Although plaintiff is only seeking $143,194.69 in reimbursement, defendant argues that the true measure of her medical damages is $442,792.59, the amount of defendant's medical bills before they were reduced due to write-offs by plaintiff. Defendant cites *White v. Jubitz Corp.*, where the Oregon Court of Appeals held that billed amounts later written off by a medical provider are economic damages. 182 P.3d 215, 219 (Or. Ct. App. 2008) (concluding that

17 - OPINION AND ORDER

damages are "those charges to which a[n insured] becomes liable or subject when the [insured] received treatment, without regard to amounts that a medical provider subsequently writes off"). Asserting that her medical expenses alone were $442,792.59, defendant argues that she has not been made whole by her recovery.

The underlying premise of defendant's argument – that a participant's medical expenses can be used to offset a plan's right to reimbursement – is flawed. In order to guarantee that an injured insured was made whole, the *White* court adopted a rule that allowed an insured to recover the full amount for which they could be potentially held liable. *See* 182 P.3d at 219 (observing that a plaintiff's "personal liability on a medical bill would vary greatly depending on whether, at the time of trial, the plaintiff or medical provider had submitted bills to the insurance provider, or whether the insurance provider had processed the bills and calculated the amounts that it would pay on the plaintiff's behalf"). Defendant, however, was never financially responsible for either the $442,792.59 or $143,194.69 figure. Not only did plaintiff pay for defendant's medical expenses, the SPD stipulates that a plan member is only required to reimburse the plan after they receive a settlement. Mayor Aff., Ex. 11 at 3 (noting that "*if* you receive a settlement for an illness or injury, you must pay us back for the cost of your treatment") (emphasis added).

Because defendant was never personally responsible for her medical expenses, both the $442,792.59 and the $143,194.69 figure are irrelevant for purposes of the made whole doctrine. In determining whether a plan member has been made whole, this court concludes that the factfinder need only consider damages other than the medical expenses for which subrogation is sought.

18 - OPINION AND ORDER

Defendant has introduced affidavits that purportedly establish losses in excess of $166,666.66, the amount recovered by defendant after attorney fees are deducted. In an affidavit, counsel for defendant estimated that his client's claim for medical expenses, loss of earning capacity, lost wages, future medical expenses, and pain and suffering is worth approximately $3,547,792.59.[2] Rosenbaum Aff. ¶ 3. In its Response, plaintiff objects that the affidavit submitted by defendant's attorney "d[id] not give a lot of details" and that there remained a genuine issue of fact for trial as to damages. Pl.'s Resp. at 6. Defendant subsequently submitted affidavits from two other attorneys, which alternately estimate that defendant's claim is worth "$2,500,000 plus" or "in the range of $2,000,000.00 to $3,000,000." Jolles Aff. ¶ 5; Simmons Aff. ¶ 7.

In *Barnes*, plaintiff's counsel submitted an affidavit attesting to the fact that his client sustained $65,000 in damages, including medical expenses, pain and suffering, and special damages. In addition to the attorney's affidavit, the Ninth Circuit considered an exhibit that indicated the plaintiff had $8,906.92 in lost wages. 64 F.3d at 1395. The court, noting that the ERISA plan "did not dispute the $65,000 figure or present its own estimate," determined that plaintiff had not been made whole by the $25,000 she recovered from the tortfeasor. *Id*.

Defendant argues the submitted affidavits establish, as a matter of law, that defendant has not been made whole. This court has carefully reviewed the affidavits, along with descriptions of the injuries suffered by defendant and the attached photographs of defendant's damaged automobile. Given the clear liability of the tortfeasor and the catastrophic injuries sustained by defendant, it appears doubtful that a jury would value defendant's claim at less than $166,666.66.

---

[2] This figure presumably includes the $442,792.59 in medical expenses that was billed to the Providence plan.

However, unlike the ERISA plan in *Barnes,* plaintiff has not admitted that the valuation of defendant's claims is accurate. Viewing the evidence in the light most favorable to the non-moving party, this court cannot determine whether a reasonable jury would find plaintiff had been made whole by the $166,666.66 recovery. "For nothing is better settled than that, in such cases as the present, and other actions for torts where no precise rule of law fixes the recoverable damages, it is the peculiar function of the jury to determine the amount by their verdict." *Barry v. Edmunds*, 116 U.S. 550, 565 (1886). As discussed above, defendant will be required at trial to prove that her damages – including medical expenses other than those paid by plaintiff, loss of earnings, pain and suffering, and future medical expenses – exceed $166,666.66.

> **6.**     **Whether Subrogation Is "Appropriate" Under ERISA**

ERISA permits a fiduciary to bring a civil action to obtain "appropriate equitable relief . . . to enforce any provisions . . . of the plan." 29 U.S.C. § 1132(a)(3). Defendant asserts that it would not be appropriate to permit reimbursement for a variety of reasons: the incorrect attachment of Exhibit A to the complaint, alleged inconsistencies and ambiguities in the plan documents, and the made whole doctrine. Defendant also asserts that it would "not be equitable or appropriate for the plaintiff to gut this very limited settlement by requiring repayment in full of all its medical bills." Def.'s Reply at 14.

Defendant cites *Arkansas Department of Health & Human Services v. Ahlborn*, 547 U.S. 268 (2006), for the proposition that Providence's reimbursement right should be limited to a percentage of defendant's recovery. The plaintiff in *Ahlborn* was involved in a car accident and later recovered $550,000 from the tortfeasor. *Id*. at 274. The parties to the settlement stipulated that defendant's claim was worth $3 million. *Id*. Based upon these figures, the Court only allowed Medicaid to recover one-sixth of the expenses paid by Medicare. Defendant argues that

20 - OPINION AND ORDER

*Ahlborn* stands for the proposition that courts should apply equitable principles and only allow partial reimbursement if justice requires.

This issue is not yet ripe. Since both parties' motions for summary judgment are denied, this matter will continue to trial. If a jury decides that defendant has not been made whole and that plaintiff is not entitled to reimbursement, a ruling on this issue will be unnecessary. If a jury decides that plaintiff is entitled to a portion of defendant's recovery, this court will then determine whether the award is "appropriate" given the Supreme Court's decision in *Ahlborn*.

### 7.    Breach of Contract

Plaintiff has also raised a common law breach of contract claim. In *Providence Health Plan v. McDowell*, the Ninth Circuit held that a breach of contract action involving a reimbursement provision was not preempted by ERISA. 385 F.3d 1168, 1172 (9th Cir. 2004) (concluding that the claim was not preempted because "Providence is simply attempting, through contract law, to enforce the reimbursement provision"). As in *McDowell*, "Providence has already paid ERISA benefits on behalf of the [defendant], and they are not disputing the correctness of the benefits paid." *Id.*

Pursuant to *McDowell*, plaintiff's breach of contract claim survives defendant's motion for summary judgment. In light of this court's decision to apply the made whole doctrine, however, the state law breach of contract claim is immaterial to the ultimate outcome of the dispute. Because the made whole doctrine applies to the reimbursement language in the SPD, the result will be the same whether this court applies breach of contract principles or the "appropriate equitable relief" provided under § 502(a)(3). In either case, no reimbursement of the plan is required until defendant has been fully compensated for her losses.

### 8.    Attorney Fees and Costs

21 - OPINION AND ORDER

The Employee Retirement Income Security Act states that "the Court in its Discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  The Ninth Circuit has noted that "'[t]his section should be read broadly to mean that a plan participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under his plan, should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"  *Carpenters Health and Welfare Trust for Se. Cal. v. Vonderharr*, 384 F.3d 667, 674 (9th Cir. 2004) (quoting *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984)).  The court notes that an ERISA plan's continued prosecution of a legal matter, in the face of substantial evidence that a plan member has not been made whole, is precisely the type of behavior for which a court will typically allow attorney fees.[3]  Because both parties' motions for summary judgment are denied, however, this court need not decide whether to award attorney fees at this point.


**CONCLUSION**

For the foregoing reasons, plaintiff's Motion for Summary Judgment [17] and defendant's Motion for Summary Judgment [20] are both denied.

IT IS SO ORDERED.

DATED this   13   day of March, 2009.


                                  /s/ Ancer L. Haggerty
                                  Ancer L. Haggerty
                                  United States District Judge

---

[3] Were plaintiff to stipulate that defendant's damages exceed $166,666.66, this court would not impose attorney fees and costs from that point forward.

22 - OPINION AND ORDER

23 - OPINION AND ORDER